LAW OFFICES OF
# NATALI J.H. TODD, P.C.

NATALI J.H. TODD
MEMBER: NY & MA BAR

26 COURT STREET
SUITE 413
BROOKLYN, NY 11242-1134

Tel: 718-797-3055
Fax: 718-504-3900
E-mail: *natali_todd@yahoo.com*
www.natalitoddlawyer.com

October 6, 2024

By ECF
Honorable Victor Marerro
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/7/2025

Re:   U.S. v. Philip Mosca, 25 Cr. 210 (VM)
      Laptop Request for Client's Use at MDC

Dear Judge Marerro:

     Counsel writes in response to the government's objection to our request to permit Mr. Mosca to use a laptop to review the voluminous and technologically-rich discovery (ECF 30), and respond to the Court's Order, requesting that the defendant "make a stronger showing of need." ECF 32.

     Mr. Mosca is charged with a capital-eligible crime in a multi-defendant, nine-count indictment, where he is charged in all nine counts. The maximum sentence of imprisonment in Count Two is death or a mandatory life sentence. An additional four counts carry mandatory life sentences upon conviction, and several of the other counts carry serious prison terms, with two counts carrying mandatory minimum prison terms of ten years if convicted. Mr. Mosca has an absolute right to participate in his defense, and his inability to review his discovery and consult with counsel about it is a violation of his Sixth Amendment right.

The Scope of the Discovery and the Technological Challenges at MDC in Accessing Discovery
     The government has begun producing Rule 16 discovery that is staggering, and within the last two weeks has requested from counsel a one-terabyte hard drive for additional discovery, which will include various categories of discovery, such as cell phone extractions from several phones and Social Media returns. Mr. Mosca will be provided a copy of his own phone extractions and his Social Media return.

     To date, there are 3,305 surveillance video files, requiring at least five different proprietary programs to view the video footage's contents. A generic player cannot play these files. The phone extraction files are large, and the Cellebrite Reader used to view them requires a

LAW OFFICES OF
**NATALI J.H. TODD, P.C.**

---

newer computer with adequate Random Access Memory ("RAM") space to open them. A computer in the MDC visiting room, after three hours, is still unable to open these files because they are too large. The unit computers have the same capabilities as the computers on the visiting room floor. To address this issue, a personal laptop, either by counsel, a visiting paralegal with a laptop, or a laptop for the client, is the only solution to reviewing this type of discovery. It is the same difficulty with audio/video files that use proprietary software. The MDC computers, which are several generations behind the current Windows version, have minimal RAM[1] and cannot support these large files, requiring various technologically different programs to view them. There are thousands of PDFs, including police reports, that cannot be searched using the free Adobe Reader installed on MDC computers. The age of MDC computers struggles to open some of these large PDF files. Jail calls, which are usually part of every case, will likely be disclosed to counsel because Mr. Mosca was transferred from state custody to federal custody. Those jail calls, including those from MDC, use a proprietary player to review those phone calls. Again, the MDC computers do not have such proprietary players installed to play and review all of these media files.

     The government suggests that there are computers in the unit, but fails to disclose the number of inmates per computer, and that there is one computer in the unit for 110 inmates. It is available on a first-come, first-served basis, with no time limit. The suggestion that a unit team can troubleshoot a fifteen-year-old computer assumes that the unit team is technologically trained and further assumes that the unit computer can load the necessary programs on the dinosaur computer and update the RAM and operating platform. It is more likely that the unit team's "troubleshoot" is limited to restarting the computer when it freezes.

     The use of the aging MDC computer is not a solution to ensuring Mr. Mosca is able to participate in his defense. Given the voluminous discovery material in his case which has been made virtually impossible because of the frequent and lengthy lock-downs that is ongoing, and even in regular times, the limited access to the law library to review discovery and the lack of appropriate programs, technical issues on the aging BOP computers that are common to access the electronic discovery, the need for a laptop computer is justified.

     Once the Court has approved the laptop, counsel will purchase the laptop and deliver it to the approved vendor, Data Mill, Inc. Data Mill will disable the Wireless, Bluetooth, and printing capabilities from the BIOS of the machine, as well as remove the Wireless/Bluetooth hardware

---

[1] RAM, or random-access memory, is a computer's short-term working memory, temporarily storing data for the operating system and running applications so the CPU can access them quickly. Think of it as the desk surface where you put the papers you're currently working on.

Law Offices Of
**Natali J.H. Todd, P.C.**

---

card.  Data Mill will load the necessary programs to assist in the review of discovery, including the ability to review programs offline that typically require an online platform, such as .html files.  The laptop may not contain images or files other than those relevant to the discovery, case law, and work product related to the criminal case.

To be sure, the challenges in reviewing discovery at the Bureau of Prisons are not a local issue confined to the Southern and Eastern Districts of New York.  These challenges are a national problem, and the CJA has designed a Laptop Program Plan to address the need for incarcerated clients and indigent clients on bail to have meaningful access to discovery and participate in their defense in a meaningful way.  Please see the annexed Plan.[2]

A modified laptop as described above, and consistent with the CJA Laptop Program Plan, has been found acceptable by MDC and the government in many other cases.  Upon receipt of the modified laptop, the government will have the opportunity to inspect the laptop before loading the discovery onto the device and delivering it to MDC for the client's use, consistent with the CJA Laptop Program Plan.  The laptop and its contents are password-protected. Counsel has included a sampling of cases where the Court ordered the use of a laptop for incarcerated clients in this district and the Eastern District of New York. Counsel has consulted with Alan Nelson, the Case Budgeting Attorney for the Second Circuit, and has been advised that, as of today, the number of laptops already in the possession of incarcerated defendants is 64, and this number is expected to double by next week, once the other approved requests are processed.  Mr. Mosca's need for a laptop to review discovery that MDC's aging computers cannot support is not an outlier.

Additionally, counsel in this case has had numerous judges grant a client's access to laptops, even when no trial is scheduled. *See, U.S. v. Moye*, 20 Cr. 215 (JPO) (SDNY); *U.S. v. Muthana*, 21 Cr. 277 (PAE) (SDNY). Additionally, during counsel's visits to MDC, inmates, including counsel's clients, have been observed using laptops in the visiting room. No additional staff were required to supervise inmates using laptops. Inmates are generally escorted with inmates scheduled for legal visits, by the same staff. No additional staff is needed to supervise inmates using their laptops in the visiting room. Therefore, no extra resources or staffing are required. These decisions reflect a recognition of the need for defendants to have reasonable access to legal resources, including technology, to ensure that their constitutional right to counsel

---

[2] The 9th Circuit Court of Appeals has adopted this Plan, and more significantly, the Department of Justice's Working Committee on Discovery has utilized the program to create a pilot program in MDC, Chicago, which is currently in use.  This Plan has been utilized as the model for creating a nationwide program to provide discovery access to detained defendants.

**LAW OFFICES OF**
**NATALI J.H. TODD, P.C.**

---

is respected. Such access enables defense counsel to prepare thoroughly and engage in meaningful discussions with their client, which is essential for providing an adequate defense and effective representation.

      Accordingly, counsel for Mr. Mosca respectfully requests that the Court grant counsel's request to provide a laptop for Mr. Mosca so that he can adequately review the voluminous and complex discovery already provided by the government, and meaningfully participate in his defense.

      We thank Your Honor for your assistance in this matter.

Respectfully,
*N. Todd*
Natali Todd, Esq.
Law Offices of Natali J. H. Todd, P.C.

Christine Delince, Esq.
The Law Offices of Onaodowan & Delince

Attorneys for Philip Mosca



Request GRANTED.

SO ORDERED.

10/7/2025
DATE

VICTOR MARRERO, U.S.D.J.